UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| MICHAEL R. STOVER,<br><br>Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>Defendant. | No. CV-05-0123-AAM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, <u>INTER ALIA</u>** |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 12) and the defendant's motion for summary judgment (Ct. Rec. 14).

**JURISDICTION**

Michael R. Stover, plaintiff, applied for Supplemental Security Income Benefits ("SSI") on June 19, 2002. The application was denied initially and on reconsideration. After timely requesting a hearing, plaintiff, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") R.J. Payne on January 9, 2004. Medical experts Ronald Klein, Ph.D., and Robert Stier, M.D., testified, as did vocational expert Sharon Welter. On March 19, 2004, the ALJ issued a decision denying benefits. The Appeals Council denied a

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        1**

1  request for review and the ALJ's decision became the final decision of the Commissioner.  This
2  decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs, and will only be summarized here.  At the time of the hearing, plaintiff was 28 years old.  He has a high school equivalent education and past relevant work experience as a kitchen helper, fiberglass laminator, and nurse's assistant.  Plaintiff alleges disability since January 1, 1977 due to bipolar disorder, attention deficit hyperactivity disorder (ADHD), other mental problems, back pain, seizures, urinary tract problems and asthma.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Beane v. Richardson, 457 F.2d 758, 759 (9th Cir. 1972); Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989), quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980); Thompson v. Schweiker, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-       2**

court must uphold the decision of the ALJ. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in finding that plaintiff does not have "severe" mental impairments. Plaintiff also argues the ALJ erred in finding the plaintiff lacks credibility, and erred in his determination of the plaintiff's residual functional capacity (RFC).

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. <u>Id</u>.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        3**

claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that plaintiff had "severe" physical impairments, including urinary tract injury, back injury, drug abuse, history of hypertension, gastroesophageal reflux, asthma, and epilepsy. The ALJ found, however, that plaintiff did not have any "severe" mental impairments, relying on the hearing testimony of Dr. Klein. The ALJ found that plaintiff's "severe" physical impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1. The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a wide range of light work activity and although that RFC precluded him from performing any of his past relevant work, there were a significant number of other jobs in the regional and national economies which he could perform, as testified to by the vocational expert.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        4**

Accordingly, the ALJ found the plaintiff not disabled.

**SEVERITY OF MENTAL IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §416.908.

Step Two is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. Bowen, 482 U.S. at 148. See also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen, 482 U.S. at 153-54 ("[S]tep two inquiry is a de minimis screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at Step Two. Bowen, 482 U.S. at 158. "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §416.921(b).

Dr. Klein testified that based on his review of the record, he could find no objective evidence of bipolar disorder. (Tr. at p. 822). With regard to plaintiff's attention deficit disorder (ADD), Dr. Klein opined that those "problems were present from childhood, and therefore, were present when [plaintiff] was gainfully employed in the past, which he was at least from 1987 to 1996 at various jobs . . . [a]nd therefore . . . ADD . . . has not and does not indicate an impairment from substantive gainful activity." (Id.). Dr. Klein testified that there was no consensus from the medical record that the plaintiff had a specific personality disorder, and if one were to assign an Axis II disorder to the plaintiff, it would be antisocial personality disorder,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        5**

which Dr. Klein asserted is not covered by Section 12.08 of the Listing of Impairments. (Id. at 828-29). According to Dr. Klein, his information was that there was a "specific intent . . . to not allow anti-social (sic) personality disorder to be a valid rationale for rendering somebody disabled . . . for a lot of reasons not the least of which it would virtually make a mockery of the entire system." (Id. at 829). Dr. Klein added that he thought the personality disorder diagnosis was greatly influenced by the fact that plaintiff was incarcerated at the time. (Id. at 829-30).

The conclusion of a non-examining physician, such as Dr. Klein, does not constitute substantial evidence by itself. See Erickson v. Shalala, 9 F.3d 813, 814 at n. 7 (9th Cir. 1993), and Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)("The non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions and conclusions of an examining physician"). In Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995), the Ninth Circuit emphasized, however, that the reports of a non-examining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with the other evidence. The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted).

The psychological/psychiatric record begins with a 1998 psychological report from Dieter M. Burckhardt, Ph.D., while plaintiff was incarcerated in the Washington Corrections Center in Shelton, Washington. Based on his examination of the plaintiff, Dr. Burckhardt opined:

> It is likely that Mr. Stover is suffering from a major mental illness. Besides, he also displays a Histrionic Personality Disorder with dependent traits and signs of over-controlled hostility which, in situations of increased stress and/or the abuse of substances or alcohol, may lead to acting out behavior. This may also indicate an adult or residual form of Attention Deficit Hyperactivity Disorder (ADHD).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        6**

1  (Tr. at pp. 279-80).

2      Dr. Burckhardt diagnosed the plaintiff with "R/O Bipolar Disorder" on Axis I, that being

3  "Rule Out Bipolar Disorder," and with Histrionic Personality Disorder on Axis II.[1]  He assigned

4  plaintiff a GAF (Global Assessment of Functioning) score of 75 indicating no more than slight

5  impairment in social, occupational or school functioning.  American Psychiatric Ass'n,

6  Diagnostic & Statistical Manual of Mental Disorders, (4th ed. Text Revision 2000)(DSM-IV-

7  TR).  In April 1999, plaintiff underwent a psychiatric evaluation at the Twin Rivers

8  Corrections Center for his ADD.  The plaintiff indicated he was first diagnosed with ADD at age

9  nine and had been treated with Ritalin, Cylert, and Wellbutrin, and apparently had received the

10  Wellbutrin while at Shelton.  (Tr. at p. 294).  Joanne Sprunger, a registered nurse practitioner

11  (ARNP), provided the following clinical impression:

> It appears that Mr. Stover probably does have attention deficit disorder that is residual.  He does not appear to have typical symptoms of hyperactivity any more and he describes himself as having been able to control that, although he says he does run around a lot in the cell.  He was diagnosed by Dr. Burkhart (sic) at Shelton as having bipolar disorder, which is how he became classified as having a serious mental illness.  I see no evidence at all for bipolar disorder.  I think most of the symptoms that affect his concentration and attention are not tied to a mood disorder, but more likely due to his attention deficit disorder.  Mr. Stover is quite concerned about having a label of being seriously mentally ill and rightfully so.  He would like to be retested with the understanding that his symptoms may have been caused by his attention deficit disorder.  He is quite open to resuming Wellbutrin.

20  (Tr. at p. 297).

21      On Axis I, Ms. Sprunger diagnosed the plaintiff with residual ADHD and on Axis II with

22  "Rule out Histrionic Personality Disorder."  (Id.).

23      In June 2001, plaintiff was evaluated by psychologist James E. Bailey, Ph.D.  Dr. Bailey

24  diagnosed "Bipolar I disorder mixed" on Axis I, along with "Attention deficit disorder combined

25  type."  On Axis II, he diagnosed "Antisocial personality disorder."  He assigned the plaintiff a

---

[1] Mental disorders diagnosed on Axis I are those that cause the patient significant impairment and are the focus of the patient's treatment.  The exception is personality disorders and mental retardation, which are diagnosed on Axis II.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      7**

GAF score of 50 because he (plaintiff) "shows serious symptoms, conflicts with coworkers, conflicts with authority, and continuous difficulties with impulse control." (Tr. at p. 405). A GAF of 50 indicates "serious" symptoms with "serious impairment in social, occupational, or school functioning." Dr. Bailey thought plaintiff would have marked limitations in his ability to exercise judgment and make decisions, and in his ability to perform routine tasks. He also thought plaintiff would be markedly limited in his ability to respond appropriately and to tolerate the pressures and expectations of a normal work setting, and to control physical or motor movements and maintain appropriate behavior. He thought plaintiff would be severely limited in his ability to relate appropriately to co-workers and supervisors, and to interact appropriately in public contacts. (Tr. at p. 408).

In April 2002, plaintiff was again seen by Dr. Bailey. Dr. Bailey's diagnoses were the same as was the GAF score (50) he had previously assigned to the plaintiff. (Tr. at pp. 495-96). Dr. Bailey stated that plaintiff had "serious symptoms in mood swings and many conflicts with coworkers and society" and "[i]n terms of concentration and persistence, he seems distractable on routine duties." (Tr. at p. 496). Dr. Bailey noted the same marked and severe limitations he had noted previously. (Tr. at p. 499).

In May 2002, plaintiff was seen at Spokane Mental Health for a psychiatric assessment. Lori Pinter, ARNP, diagnosed ADHD on Axis I, ruling out bipolar disorder. She diagnosed personality disorder "NOS" (not otherwise specified) on Axis II, with antisocial and borderline traits. She assigned the plaintiff a GAF score of 58, indicating moderate symptoms and moderate difficulty in social, occupational, or school functioning. (Tr. at pp. 519-20).

There is substantial evidence in the record to support Dr. Klein's conclusion that plaintiff does not suffer from a bipolar disorder. Indeed, this is reinforced by a November 2004 psychological report from Gary Lauby, Ph.D., which, although not available to Dr. Klein and the ALJ, was considered by the Appeals Council. Dr. Lauby diagnosed the plaintiff on Axis I with ADHD, adjustment disorder with depressed mood, and "rule out" cognitive disorder. On Axis II, he diagnosed the plaintiff with antisocial personality disorder. He assigned the plaintiff a "current" GAF score of 61, indicating mild symptoms and some difficulty in social, occupational

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        8**

or school functioning. (Tr. at pp. 815-16). Dr. Lauby, however, also indicated plaintiff was severely limited in his ability to exercise judgment and make decisions, ability to relate appropriately to co-workers and supervisors, ability to interact appropriately in public contacts, and ability to respond appropriately and tolerate the pressures and expectations of a normal work setting. He also indicated plaintiff was markedly limited in his ability to perform routine tasks. (Tr. at p. 810).

As noted, while Dr. Klein did not dispute that plaintiff suffered from ADHD, he was of the opinion that this did not impair the plaintiff from performing substantial gainful activity, as evidenced by his employment history from 1987 to 1996. Plaintiff worked as a nursing assistant in a nursing home from March 1994 to June 1994. He worked as a keyboard assembler from June 1994 to September 1994, as a fiberglass laminator in June 1995, as a wood grader from August 1995 to September 1995, and as a dishwasher from April 1996 to June 1996. The longest job he held during that period was the three or four months he spent working at the nursing home. (Tr. at 209).[2] His brief and spotty employment is confirmed by his limited earnings record. (Tr. at 106-07). Plaintiff's counsel asked Dr. Klein if he was familiar with plaintiff's employment record and the doctor indicated he was not. Counsel asked the doctor to assume plaintiff had worked for approximately ten different employers, earning a total of $7,000, to which the doctor responded:

> If it was a clear pattern of Mr. Stover being unable to perform, that would be one thing. If it was Mr. Stover getting bored or being fired for inappropriate but voluntarily controllable behavior, that would clearly be another thing. If in fact, he didn't show up for work because too intoxicated or drug influenced to attend, that would obviously be something else. If there were seizure problems that precluded jobs, that would still be another factor. So unless I had those factors I couldn't make a lot of sense out of the pattern of multiple jobs that you've described.

(Tr. at p. 827).

---

[2] There is another version of plaintiff's work history (Tr. at p. 126) which is somewhat different, but which nevertheless again shows that plaintiff had a number of different jobs which lasted only very brief periods of time.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      9**

It appears that Dr. Klein left the hearing before the plaintiff commenced his testimony by telephone. (Tr. at 837). Plaintiff testified he left work as a nursing assistant because of a car accident and the prospect of receiving higher pay at a different job. (Tr. at p. 868). Plaintiff testified he left his job as a fiberglass laminator because it was interfering with his breathing and because he got bored with the job. (Tr. at 869). Plaintiff testified he had been fired from most of the jobs he has held, including his job as a wood grader, because he was too slow and because he got into a verbal altercation with his supervisor. (Tr. at 869-70). And due to his incarceration, plaintiff's job as a dishwasher came to an end. (Tr. at 871). Plaintiff told Ms. Sprunger during his April 1999 psychiatric evaluation that he generally loses interest in his jobs and then just does not show up for work one day. (Tr. at 296).

Dr. Klein did not hear the plaintiff testify about his work history and was not otherwise familiar with the plaintiff's work history as revealed in the written record. Employment problems are common for adults with ADHD, as are chronic boredom, difficulty controlling anger, and substance abuse and addiction, among other things. They change employers frequently and perform poorly at work. www.medicinenet.com. In a "Psychiatric Review Technique" form completed by him, Dr. Klein acknowledged that plaintiff had "longstanding cognitive deficits" that at most, caused the plaintiff "mild" difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. at pp. 760 and 769). Those who examined the plaintiff, however, consistently opined that plaintiff's limitations in these areas ranged from "moderate" (defined as significant interference with basic work-related activities) to "severe" (defined as inability to perform one or more basic work-related activities). The ALJ did not provide "specific and legitimate" or "clear and convincing" reasons for favoring Dr. Klein's opinion about the impact of plaintiff's ADHD over the opinions of those who examined the plaintiff. As such, there is not "substantial evidence" to support the ALJ's conclusion that plaintiff's ADHD is not a "severe" mental impairment.

Adults with ADHD can be withdrawn and antisocial. www.medicinenet.com. Accordingly, the diagnosis of antisocial personality disorder for the plaintiff is not inconsistent with the ADHD diagnosis. Dr. Klein did not dispute the validity of the diagnosis, but asserted,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        10**

without any authority, that antisocial personality disorder is not recognized by Social Security's Listing of Impairments (Section 12.08, 20 C.F.R. 404, Subpart 1). In his decision, the ALJ did not supply that authority and this court is not aware of any such authority. See Valdivia-Ramos v. Barnhart, 347 F.Supp.2d 911, 918 (D. Or. 2004)(ALJ's conclusion regarding plaintiff's mental condition not supported by substantial evidence where among other evidence, a doctor had diagnosed plaintiff on Axis II with antisocial personality disorder). Furthermore, examining professionals have consistently diagnosed plaintiff with antisocial personality disorder, even during periods when he has not been incarcerated. The ALJ did not provide "specific and legitimate" or "clear and convincing" reasons for accepting Dr. Klein's opinion that plaintiff's antisocial personality disorder is not a cognizable "severe" mental impairment. Substantial evidence does not support that conclusion.

**CREDIBILITY/PHYSICAL RFC**

The ALJ found the plaintiff's allegations regarding his physical limitations were not entirely credible.[3]

The ALJ may not reject a claimant's statements about his limitations merely because they are not supported by objective evidence, nor solely on the basis of the ALJ's own observations of the claimant at the hearing. Tonapeytan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." Id. at 1148. See also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). An ALJ may

---

[3] The ALJ's credibility analysis has no bearing on whether the plaintiff has a Step Two "severe" mental impairment.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        11**

not reject a claimant's testimony without offering clear and convincing reasons for rejecting the claimant's subjective statements.  Smolen, 80 F.3d at 1281-82.

Relying on the opinion of Dr. Stiers rendered at the hearing, the ALJ found plaintiff would be capable of light work activity with lifting and carrying 20 pounds occasionally and 10 pounds frequently.  The ALJ also found the plaintiff capable of standing and walking 6 hours out of an 8 hour day, although he would need to alternate sitting and standing every thirty minutes to an hour due to piriformis spasm.  Finally, the ALJ found that although the plaintiff did not have any postural limitations, he would need to avoid concentrated exposure to dusts, fumes, odors, chemicals, gases, and hazardous machinery and heights. (Tr. at p. 26; pp. 849-52).  The ALJ observed that plaintiff testified to more severe physical restrictions, including that he is only able to sit for 15 to 20 minutes before his left leg or back starts to throb, and that he is only able to walk for about 4 blocks or ½ hour.  Plaintiff testified he could lift 20 pounds, but not for long periods of time, and that he could stand for only ½ hour.  He testified he had been standing throughout the hearing, but had needed to sit down three to four times for ten to fifteen minutes at a time.  He testified he experiences a level 10 pain about one to two times a week which lasts for three to four hours. (Tr. at p. 27; 873-76; 882-83).

Among other things, however, the ALJ correctly observed that plaintiff's most recent primary care provider, Julie Koep-Woffenden, ARNP, (Tr. at 872), indicated that plaintiff had an exertional capacity for light work[4], with consideration of non-exertional limitations presented by his asthma and seizure disorder. (Tr. at p. 724).  The ALJ also noted that Christina Muth, the ARNP who had seen plaintiff previously, indicated plaintiff had the exertional capacity for medium work (lift 50 pounds maximum and frequently lift and/or carry up to 25 pounds).[5]  (Tr. at p. 384).  The ALJ also observed that in April 2002, plaintiff sought treatment for sunburn

---

[4] Lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds.  May require frequent walking or standing, or involve sitting most of the time with occasional pushing and pulling of arm and/or leg controls.  20 C.F.R. §416.967(b).

[5] 20 C.F.R. §416.967(c).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        12**

1 after having laid concrete the entire day on the previous day.  (Tr. at p. 638).  Furthermore, in
2 September 2001, a chart note from Koep-Woffenden indicated plaintiff had been laying sod a
3 few days ago, and another note from October 2001 indicated he had been involved in framing a
4 house.  (Tr. at pp. 719-20).  Yet another chart note from Hope Partners, dated September 13,
5 2001, indicated plaintiff was helping a neighbor rebuild a deck.  (Tr. at p. 576).

6       The opinions of Koep-Woffenden and Muth regarding plaintiff's physical residual
7 functional capacity do not conflict with the opinion provided by Dr. Stier, and the activities
8 reported by plaintiff certainly are not inconsistent with Dr. Stier's opinion regarding plaintiff's
9 physical residual functional capacity.  The ALJ offered clear and convincing reasons for
10 rejecting plaintiff's subjective statements about pain and physical limitations.  Substantial
11 evidence supports the ALJ's physical residual functional capacity determination as based on the
12 opinion provided by Dr. Stier.

13

14 **VOCATIONAL EXPERT HYPOTHETICAL/REMAND**

15       "If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then
16 the expert's testimony has no evidentiary value to support a finding that the claimant can perform
17 jobs in the national economy."  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

18       Obviously, since the ALJ found plaintiff did not have any severe mental impairments, his
19 hypothetical to the vocational expert (VE) did not include any significant limitations resulting
20 from mental symptomatology. (Tr. at pp. 888-89).  See 20 C.F.R. §416.920a(d)(1)("Mild"
21 limitations do not significantly limit ability to perform basic work-related activities).
22 Essentially, all the VE was presented with was plaintiff's physical residual functional capacity as
23 opined by Dr. Stier and ultimately relied upon by the ALJ in his decision.
24 Based on this physical RFC, the VE identified significant numbers of jobs in the national and
25 regional economies which plaintiff could perform.  (Tr. at pp. 889-90).

26       The VE was asked by plaintiff's counsel to assume the physical limitations proposed by
27 the ALJ, plus moderate limitation in the plaintiff's ability to maintain attention and concentration
28 and work around other people, as well as a moderate limitation in being able to perform at a

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        13**

1  consistent pace, and the need for frequent checks by a supervisor.  The VE could identify no
2  occupations available to such a person.  (Tr. at pp. 891-92).
3        The mental limitations indicated by those who examined the plaintiff are generally more
4  than just "moderate" ("marked" and "severe").[6]  This general agreement by the examining
5  professionals, "the similarity of their conclusions[,] provides reason to credit their opinions."
6  Lester, 81 F.3d at 832.  Accordingly, the opinions of the examining professionals will be
7  credited as a matter of law.  Id. at 834.  This would normally result in a reversal of the ALJ's
8  decision and remand for an award of benefits.  There is, however, an issue which warrants
9  remand for further administrative proceedings.  The decision whether to remand for further
10 proceedings or remand for an award of benefits is within the discretion of the court.  Harman v.
11 Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).
12       The record is replete with references to plaintiff's struggles with alcohol and/or drug
13 addiction.  It is not entirely clear whether this remains an issue for the plaintiff (whether it is a
14 past addiction or both a past and a current addiction), but in Dr. Lauby's report, he recited
15 plaintiff's history of alcohol and drug abuse, and noted that plaintiff stated he last used alcohol in
16 July 2004, and last used illicit drugs in 2001.  (Tr. at p. 812).  In the Washington DSHS
17 (Department of Social and Health Services) form, Dr. Lauby indicated there was evidence of
18 alcohol or drug abuse and that it was a factor in his diagnoses of adjustment disorder with
19 depressed mood, and antisocial personality disorder.  Dr. Lauby indicated that alcohol or drug
20 treatment would likely decrease the severity of these conditions and that such abuse severely
21 exacerbated these conditions.  Finally, the doctor indicated that while plaintiff acknowledged the
22 existence of such abuse, he tended to minimize it.  (Tr. at pp. 809-10).
23       An ALJ must first conduct the five-step disability inquiry without separating the impact
24 of alcoholism or drug addiction.  If the ALJ finds the claimant is not disabled under the five-step
25 inquiry, then the claimant is not entitled to benefits and there is no need to consider the impact of

---

[6] In formulating the hypothetical, counsel relied on limitations indicated by a non-examining psychologist, Sharon Underwood, Ph.D.  (Tr. at p. 478).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        14**

alcoholism or drug addiction. It is only if the ALJ finds the claimant is disabled and there is medical evidence of alcoholism or drug addiction that the ALJ should proceed to determine if the claimant would still be disabled if he stopped using alcohol or drugs. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

On remand, the ALJ will conduct the five-step inquiry, but this time with a finding at Step Two that the plaintiff has severe mental impairments, including adult ADHD and antisocial personality disorder, which cause him "moderate" to "severe" impairments as opined by the examining professionals (Drs. Lauby and Bailey). This inquiry will be made to determine the impact, if any, of the plaintiff's alcohol/drug addiction on his mental impairments. If the ALJ determines the plaintiff is disabled after conducting this inquiry, then he will need to determine if the plaintiff would still be disabled if he stopped using alcohol and/or drugs. Id.

## CONCLUSION

Plaintiff's motion for summary judgment (Ct. Rec. 12) is **GRANTED** and defendant's motion for summary judgment (Ct. Rec. 14) is **DENIED**. Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision denying benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings to consider plaintiff's severe mental impairments at Steps Three, Four and Five of the sequential evaluation process.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this  10th  of March, 2006.

        s/ Alan A. McDonald
        ALAN A. McDONALD
        Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-**      15